UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

JOANNE FRATELLO,

                Plaintiff,

    -against-

ROMAN CATHOLIC ARCHDIOCESE
OF NEW YORK,

                Defendant.
-----------------------------------------------------------------

FILED
U.S. DISTRICT COURT

2012 OCT -1  PM 1:36

S.D. OF N.Y.

**COMPLAINT**

*Jury Trial Demanded*

Plaintiff JOANNE FRATELLO, through the undersigned counsel MICHAEL D. DIEDERICH, JR., complains of the defendant ROMAN CATHOLIC ARCHDIOCESE OF NEW YORK as follows:

### Prefatory Statement

This is a action for damages and injunctive relief against defendant Roman Catholic Archdiocese of New York ("Defendant"), for its discriminatory termination of Plaintiff's employment, in violation of, *inter alia*, the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e ("Title VII"), Section 296 *et seq* of the New York State Executive Law, and in breach of contract.

### PARTIES

1.      Plaintiff Joanne Fratello is, and was at all times relevant herein, a citizen of the United States and a resident of the Town of Stony Point, County of Rockland, State of New York.

2.      Defendant Roman Catholic Archdiocese of New York (hereinafter "Defendant" or "Archdiocese"), upon information and belief, is a religious corporation authorized to conduct business and other activities under the laws of the State of New York.

3.      Upon information and belief, the Archdiocese has been involved with the education of Catholic and non-Catholic children at its various elementary and secondary schools.

4.      Upon information and belief, the head of the Archdiocese is Archbishop Timothy

1

Dolan, and its educational headquarters is at the Office of the Superintendent of Schools,

Archdiocese of New York, 1011 First Avenue, 18th Floor, New York, New York 10022.

5.      Defendant is an employer within the meaning of 42 U.S.C. § 2000e-(b) and the

laws of the State of New York.

## JURISDICTION AND VENUE ALLEGATIONS

6.      This court has jurisdiction over this action under 42 U.S.C. § 2000e-5(f), under 28

U.S.C. § 1331 and § 1343(4).  This Court has supplemental jurisdiction over Plaintiff's state law

claims pursuant to 28 U.S.C. § 1367

8.      Venue is proper in this Court.

## EXHAUSTION

9.      Plaintiff filed a timely charge of gender discrimination and retaliation with the

Equal Employment Opportunity Commission and brings this action within ninety (90) days of

the receipt of a Notice of Right To Sue,  received by Plaintiff after July 5, 2012.

## FACTUAL ALLEGATIONS

Overview

10.      Plaintiff was discriminated against by the Archdiocese of New York on the basis

of her gender, and in retaliation for complaining of gender discrimination and sexism.

11.      Specifically, as school principal she was treated differently from male

administrators, and when she complained of such discrimination, her employment was

terminated via her contract not being renewed.

12.      In connection with employing Plaintiff, the Archdiocese did not require that

Plaintiff be educated in, or perform, ministerial or pastoral functions in her position as school

teacher or her subsequent position as school principal.

13.      The dispute involved in this case does not involve any internal church decision-

making that affects the faith or mission of the church itself.

14.    Rather, it involves only wrongful employment action—sexism—concerning an employee-administrator holding purely secular duties and responsibilities administering an elementary school.

Plaintiff's Background & start of employment at St. Anthony's Shrine Church

15.    Plaintiff has a bachelor's degree in Economics and Masters Degree in Education and a Professional Diploma in Educational Administration.

16.    Plaintiff was employed in the financial industry until deciding upon a career helping children, in education administration.

17.    Plaintiff is divorced.  At all times relevant herein, Plaintiff was a divorced single mother, a practicing Catholic, and until the events complained of herein and her termination, the successful principal of St. Anthony School, in Nanuet (Rockland County), New York.

18.    Plaintiff become employed by the archdiocese in or about 2003, and thereafter excelled in the organization.

19.    Initially, she was hired as a 7th and 8th grade English Language Arts teacher at Sacred Heart School, Suffern, NY 10901.

20.    After two years teaching, she pursued an advanced degree in Educational Administration.

21.    Thereafter, after the Principal of Sacred Heart School, Suffern, New York became unable to work due to illness, the Archdiocese appointed Plaintiff to serve as Acting Principal, with Sister Helen Doychak, Archdiocese District Superintendent serving as her immediate supervisor.

22.    Plaintiff simultaneously served as a part time teacher and Principal.

23.    In or about June 2006, the Archdiocese offered Plaintiff a position as a principal at

St. Joseph School, located in Florida, New York (Orange County). She served as the administrator there for one year, until the school closed.

24.     The Archdiocese suggested that Plaintiff contact Msgr. Reynolds at St. Anthony in Nanuet, New York.  Plaintiff was informed that the Archdiocese was looking for a Principal who could decrease the numbers of substitute teachers from the Church to the School, and decrease expenses of the school.  She was informed that the Archdiocese was looking for a Principal who could train the faculty on computer programs, to implement the computer system ("Student Information Systems,") and to implement a computerized emergency system made by Honeywell.  Plaintiff was informed that the Archdiocese was looking for a Principal who could bring in her own IT Team, equip each classroom with technology, and move the staff and students forward in technology, since this did not exist and was needed.

25.     Plaintiff was not informed that her status as a "lay" employee would change to being that of a "ministerial" or "pastoral" employee upon moving from a lay teacher position to a school administrator position.

26.     Plaintiff was not told that her new job as principal would involve any ministerial or pastoral duties.

27.     In 2007, Plaintiff was offered the Principal position at St. Anthony School, which she accepted.

28.     Ministerial duties were not a part of Plaintiff's job responsibilities.

Duties of workers at St. Anthony's

29.     From the start of her employment at St. Anthony's, and up until his retirement in 2010, Plaintiff was supervised by St. Anthony's pastor, the Rev. Monsignor William Reynolds.

30.     Father Joseph Deponai ("Father Jerry") replaced Monsignor Reynolds in 2010.

31.     Upon Father Jerry's arrival at St. Anthony's Shrine Church, Father Jerry

performed ministerial and pastoral duties.

32.     Father Jerry did not involve himself directly with the secular teaching, sport activities or the day to day administrative duties of the school.

33.     He celebrated masses for the children on first Friday and other religious holidays. He visited classes periodically, and taught a religion class.

34.     As to school activities, classes are taught by both lay teachers and religious teachers.

35.     Schoolteachers (whether lay or religious) are expected to teach the courses assigned to them to the standards expected of such study, which comport with the requirements of the Board of Regents of the State of New York.

36.     Lay teachers and religion teachers report to the Principal for administrative purposes. The Principal provides no guidance or instruction to religion teachers on matters of the Catholic faith.

Employment discrimination and reprisal against Plaintiff

37.     Soon after Father Jerry began at the school, he demonstrated bias against women generally, and Plaintiff in particular.

38.     For example, he told Plaintiff that she should not drink coffee in her office with the facility manager.  Father Jerry opined that this would "cause a scandal" at his church.

39.     This was notwithstanding the fact that Plaintiff and the facility manager were both in managerial positions; that they had business reasons for direct and frequent communication related to the operation and functioning of the school; and that drinking coffee or tea while discussing business matters was not inappropriate or prohibited in this office environment.

40.     Plaintiff complied, and ceased having coffee in her office with any male colleagues.

41.     Thereafter, in June 2011, Father Jerry falsely accused Plaintiff of having "an affair" with the facility manager.

42.     Father Jerry had no basis for his false accusation.

43.     Upon information and belief, Father Jerry's conclusions and accusations of adultery were drawn solely from the following conduct:

- Plaintiff's having a cup of coffee with the male colleague with the door open, and
- Plaintiff having lunch with the same male colleague in connection with a business activity of the school.

44.     Plaintiff complained to Father Jerry that she objected to his discriminatory assumption that she was engaged in adultery with a co-worker.

45.     Thereafter, Plaintiff complained to others in the Defendant's hierarchy, including Msgr. Reynolds (who, upon information and belief, even though retired remains influential and with status in the church).

46.     Upon information and belief, Plaintiff's complaints comprised protected activity under Title VII and the NYS Human Rights Law.

47.     After Plaintiff challenged Father Jerry's sex discrimination, Father Jerry invented an entirely new accusation, namely, that Plaintiff used profane words in a telephone conversation with him, as well as false assertions regarding teacher matters.

48.     These falsities were invented by Father Jerry, and made out of whole cloth, as a pretext to cover up his sexism, chauvinism, archaic views of women in the workplace, and gender-based animus. Father Jerry had no facts to justify any suspicion of wrongdoing on Plaintiff's part, yet because of Plaintiff's gender, and because of her objection to his discriminatory accusations, he concocted false allegations to justify his desire to terminate

6

Plaintiff's employment, through the non-renewal of her contract.

49.     Although Father Jerry engineered Plaintiff's contract non-renewal and termination of her employment, he did not in any way seek to discipline or cause the termination of the male supervisor, the facilities manager.

50.     Upon information and belief, the Defendant Archdiocese accepted Father Jerry's discriminatory recommendation knowing that only the female manager, not the male manager, was being disciplined for the (factually baseless) adultery allegation.

51.     Moreover, when the Defendant was made aware of the facts and circumstances alleged above, upon information and belief, it failed to engage in any good faith investigation into the matter, but instead adopted the position that it could act with impunity under its assertion of religious immunity—that civil authorities have no power to protect church "ministers."

52.     The Defendant Archdiocese's disparate treatment of Plaintiff vis a vis the facilities manager indicates that Defendant, in a gender-biased manner, credited Father Jerry versions of events, but not Plaintiff's, solely based upon gender.

53.     Upon information and belief, the Archdiocese refused to consider Plaintiff's version of events and circumstances, but credited Father Jerry's version, notwithstanding that fact that Father Jerry has, upon information and belief, a highly blemished pastoral and employment history with the church.

54.     Additionally, gender bias explains why Plaintiff was not afforded the opportunity for an internal hearing (ecclesiastical "due process") which Defendant purported to afford to Plaintiff, its contract employee, regarding matters of "immorality" or otherwise involving internal church matters (which this case does not involve). *See*, ¶ 3(d) of Plaintiff's contract executed July 3, 2007.

7

55.     Following the non-renewal of Plaintiff's contract around July 1, 2011, Plaintiff complained of her illegal treatment.

56.     Defendant then continued its discriminatory and retaliatory action by its refusal to renew Plaintiff's contract, notwithstanding being further made aware of the fact that Plaintiff was being treated unfairly, in a discriminatory and sexist manner, and by its refusal to provide Plaintiff with due process internally.

57.     At all times during the course of Plaintiff's employment, Plaintiff was fully qualified for her position, and her performance at all times was well documented and far exceeded Defendant's requirements.

No ministerial requirements for Defendant's lay workers

58.     As Defendant's schools, only religious teachers, who are required to be Catholic, teach religious classes.  In order to teach religion, the Archdiocese requires such teachers to take "in house classes" provided by the Archdiocese.

59.     Plaintiff was not required to take such "in house classes."

60.     As a requirement to become a principal, a person must have proper Administrative certification through New York State or be in the process of completing the course work. Religious training is not required.

61.     Administrators, including principals, are hired on the basis of secular qualities such as the ability to establish policy and procedures; maintain and create business and marketing plans; and promote a safe and nurturing learning environment.

62.     Plaintiff was hired based upon her administrative degree and was not required to take any college classes with regard to theology.

63.     Defendant did not require or demand any religious training for Plaintiff in connection with her employment as school principal.

8

64.     School administrators are not required or expected to teach religion, nor to provide religious instruction or ministerial services.

65.     Plaintiff was solely a school administrator, and in this capacity she handled secular duties such as managing daily operations of the school, curriculum, safety of students, some finances, and creation of extra-curricular, non-religious activities such as golf and the art club.

66.     Plaintiff did not provide religious instruction or pastoral services in connection with her employment as school principal, nor did she have any ministerial duties.

67.     In fact, Plaintiff's employment contract was entitled "Contract of Employment for Lay Principals."

68.     Plaintiff never led prayers or religious services in connection with her employment as school principal.

69.     Plaintiff did not have a religious job title.

70.     Plaintiff was not held out as a minister by the Archdiocese.

71.     Plaintiff did not hold herself out as a minister, pastor or otherwise as holding religious authority.

72.     Defendant never advised Plaintiff that the Archdiocese was immune from the employment discrimination laws of the State of New York and the United States of America.

73.     Upon information and belief, the archdiocese posts notices informing its workers, including Plaintiff, that workers are protected by the employment laws of the State of New York and the United States.

74.     At Plaintiff's school, St. Anthony's Shrine Church, this notice was posted in the faculty room.

75.     Upon information and belief, these notices include notification that workers are protected from gender discrimination and retaliation for complaining of gender discrimination.

76.     Upon information and belief, there was no indication in such notices that lay administrators or management are not protected against discrimination or retaliation.

77.     Upon information and belief, Defendant should be estopped from alleging that it has a "religious exemption" from State and federal employment discrimination laws, particularly since, upon information and belief, Defendant posts notices and portrays to the public that it does not discriminate on the basis of, among other things, race, ethnicity or gender.

### FIRST CLAIM FOR RELIEF—GENDER DISCRIMINATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C.§ 2000E

78.     Plaintiff repeats and reiterates each of the allegations above as if fully repeated here at length.

79.     Plaintiff is a woman who had at all relevant times was qualified for her position and excellent job performance.

80.     Defendant unlawfully terminated Plaintiff because of her gender.

81.     Defendant's justification for Plaintiff's termination was a pretext for discrimination.

82.     As a proximate result of defendants' actions, Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

83.     As a further proximate result of defendants' discrimination against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

84.     As a further proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other

incidental and consequential damages and expenses.

85.     Plaintiff has been damaged thereby.

86.     The conduct of Defendant was wanton, outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's protected civil rights, entitling Plaintiff to an award of punitive damages.

## SECOND CLAIM FOR RELIEF—<br>RETALIATION IN VIOLATION OF<br>42 U.S.C. § 2000E

87.     Plaintiff repeats and reiterates each of the allegations above as if fully repeated here at length.

88.     Plaintiff reported and objected to unlawful gender discrimination against her, and had an objective and reasonable belief that Defendant was engaged in conduct unlawful under Title VII.

89.     Plaintiff opposed such unlawful conduct by making good faith claims or complaints of discrimination to Defendant.

90.     As a consequence, Defendant engaged in adverse treatment of Plaintiff.

91.     This adverse treatment included not renewing Plaintiff's contract of employment with Defendant.

92.     Additionally, the adverse treatment also included not providing Plaintiff with "ecclesiastical due process"—a forum by which she would have the opportunity to internally clear her name with church authorities regarding any "internal church" matters (to the extent that the church had any *bona fide* internal concerns,[1] such as might relate to Plaintiff's Catholicism).

---

[1] For example, if an allegation were made against an Afro-American lay teacher that the teacher had murdered someone, which allegation was concocted as a pretext for firing the teacher, in addition to a civil antidiscrimination law claim, the teacher should be afforded "ecclesiastical due process" as to the "morality" issue. In a reprisal context, denial of such hearing is certainly adverse action, as it affects the lay teacher's status within the church.

93.     Plaintiff was damaged thereby.

### THIRD CLAIM FOR RELIEF—
### GENDER DISCRIMINATION IN VIOLATION OF
### SECTION 296 OF THE EXECUTIVE LAW
### *(supplemental claim)*

94.     Plaintiff repeats and reiterates each of the allegations above as if fully repeated here at length.

95.     Plaintiff is a woman who had at all relevant times was qualified for her position and excellent job performance.

96.     Defendant unlawfully terminated Plaintiff because of her gender.

97.     Defendant's justification for Plaintiff's termination was a pretext for discrimination.

98.     As a proximate result of Defendant's actions, Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

99.     As a further proximate result of Defendant's discrimination against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

100.    As a further proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

101.    Plaintiff has been damaged thereby.

102.    The conduct of Defendant was wanton, outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's protected civil rights, entitling Plaintiff to an award of punitive damages.

### FOURTH CLAIM FOR RELIEF—
### RETALIATION IN VIOLATION OF
### SECTION 296 OF THE EXECUTIVE LAW
*(supplemental claim)*

103.    Plaintiff repeats and reiterates each of the allegations above as if fully repeated here at length.

104.    Plaintiff objected to unlawful gender discrimination against her, and had an objective and reasonable belief that defendant was engaged in conduct unlawful under Section 296 of the Executive Law.

105.    Plaintiff opposed such unlawful conduct by making good faith claims or complaints of discrimination to defendant.

106.    As a consequence, defendant engaged in adverse treatment of Plaintiff.

107.    Plaintiff was damaged thereby.

### FIFTH CLAIM OF RELIEF—BREACH OF CONTRACT
*(supplemental claim)*

108.    Plaintiff repeats and reiterates each of the allegations above as if fully repeated here at length.

109.    Plaintiff entered into a contract to be employed by Defendant as a school teacher, and eventually as an administrator and principal.

110.    As part of Defendant's contract with Plaintiff, Defendant promised to pay Plaintiff compensation for her services, and in consideration of such promise, Plaintiff engaged in her employment.

111.    As part of Defendant's contract with Plaintiff, Defendant promised other things to Plaintiff, either expressly or impliedly, including but not limited to:

      a.   Limiting Plaintiff's duties to the "lay" (non-ministerial) professional administration of the school;

13

b. Not t  erminating Plaintiff's written contract, except for cause;

c. Providing Plaintiff with an opportunity for "due process" regarding internal church matters ecclesiastical in nature;

d. All   owing Plaintiff to seek civil redress in civil courts or administrative bodies regarding matters not ecclesiastical in nature, for example, church refusal to pay compensation due to Plaintiff as a employee, or violation of wage and hour laws, or violation of building safety or occupational health and safety requirements of state or federal government;

e. Providing a safe and tolerable working environment;

f. Not subjecting Plaintiff to physical violence including sexual assault; and

g. Not subjecting Plaintiff to unlawful discrimination such as sexual harassment or gender discrimination.

112.   Upon information and belief, the equal opportunity and anti-discrimination laws of the State of New York and the United States were, by the documents and understanding of the parties, impliedly incorporated, by law and in fact, into the contractual understanding between the parties.

113.   Through its actions, Defendant breached its contract with Plaintiff, and as a direct consequence failed and refused to honor its implied contractual obligations toward Plaintiff, including opposing her right to legal redress in the civil courts, and failed and refused to renew Plaintiff's contract.

114.   Plaintiff was damaged thereby.

### SIXTH CLAIM OF RELIEF—PROMISSORY ESTOPPEL
*(supplemental claim)*

115.   Plaintiff's repeats and reiterates each of the allegations above as if fully repeated

here at length.

116.    Through its interactions and dealings, the Defendant promised, expressly or impliedly, that Plaintiff's employment was governed by the ordinary rules of civil society regarding the employee-employer relationship.

117.    For example, the employment contract between Plaintiff and Defendant, prepared by Defendant, states nowhere that Plaintiff has pastoral or ministerial duties but rather, in the contrary, states that Plaintiff's "responsibilities" are that she, as principal, employed pursuant to:

> "the rules, regulations, policies and procedures of the school, the Office of the Superintendent of Schools, and the State of New York as currently in effect, or as amended, and shall fulfill all of the duties and responsibilities of the position as so required in a professional and competent manner."

and that:

> "This contract constitutes the complete agreement between the parties and may only be amended by a written addendum signed by the parties."

118.    Upon information and belief, there no contractual provision tasking Plaintiff with pastoral or ministerial duties, and she is not a pastor or minister of the church.

119.    Upon information and belief, the ministerial orders of the Roman Catholic Church are those of bishop, presbyter (priest) and deacon.

120.    Upon information and belief, in Christian churches a minister is someone who is authorized by a church or religious organization to teach beliefs, lead services such as weddings, baptisms or funerals, or otherwise to provide spiritual guidance.

121.    Neither Plaintiff, nor her position as school principal, is part of the Defendant's religious hierarchy.

122.    Plaintiff is not, and was never asked or directed to be, part of the Church's lay ecclesial ministry.

123.    Plaintiff was never informed that she was expected to serve as a "minister" in any capacity, and the clear expectation was that Plaintiff was to serve only as a lay professional school administrator.

124.    Plaintiff did not regard herself as a minister or pastor.

125.    Upon information and belief, nor did anyone at the school view Plaintiff as being a minister or pastor, or as having ministerial duties.

126.    Plaintiff was hired on renewable one year contracts.

127.    Upon information and belief, the Defendant does not "contract for" and "outsource" its pastoral and ministerial responsibilities.

128.    Defendant should be estopped from asserting that Plaintiff was a minister or pastor, or that she had ministerial or pastoral duties, and should be estopped from asserting that Plaintiff's termination had anything to do with religious beliefs or the internal religious workings of Defendant's church.

129.    Defendant should be estopped from asserting religion as a basis for unlawfully discriminatory actions against an employee assigned to an administrative job regarding employment which is, for the most part, commercial or institutional in nature—running an elementary school.

## DEMAND FOR JURY

*Plaintiff hereby demands trial by jury in this action.*

WHEREFORE, Plaintiff prays that this Court grant judgment to her containing the following relief:

1. An award of Plaintiff's actual damages in an amount to be determined at trial for loss of wages, benefits, and promotional opportunities, including an award of back pay, and front pay compensating Plaintiff for loss of future salary and benefits;

2. An award of damages in an amount to be determined at trial to compensate Plaintiff for breach of contract, mental anguish, humiliation, embarrassment, and emotional injury;

3. An award of punitive damages;

4. An order enjoining Defendant from engaging in the wrongful practices alleged herein and reinstating Plaintiff's employment;

5. An award of reasonable attorneys' fees and the costs of this action; and

6. Such other and further relief as this Court may deem just and proper.

Dated:  Stony Point, New York
          October 1, 2012


                                      MICHAEL D. DIEDERICH, JR.
                                      *Attorney for Plaintiff  MD 2097*
                                      By:


                                      BRIGITTE M. GULLIVER, *of counsel*
                                      361 Route 210                    BG 4050
                                      Stony Point, NY 10980
                                      (845) 942-0795
                                      Mike@DiederichLaw.com
                                      Brigitte@DiederichLaw.com